**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                             CRIMINAL ACTION NO. 2:04-cr-00142

BRIAN A. MORELAND,

        Defendant.

**MEMORANDUM OPINION AND STATEMENT OF REASONS**

**I.    Background**

In 2005, the Supreme Court determined that the mandatory Sentencing Guidelines regime violated the Sixth Amendment right to a jury trial and remedied this violation by excising the two provisions of the Sentencing Reform Act that made the Guidelines mandatory, thus rendering them advisory. *United States v. Booker*, 543 U.S. 220, 232-36, 258-63 (2005). In the wake of *Booker*, this court and many other district courts struggled to understand the bounds of their newfound sentencing discretion and attempted to strike a balance between the advice provided by the Guidelines and the policy instructions contained in 18 U.S.C. § 3553(a). The courts of appeals had the difficult task of reviewing such sentences for "reasonableness," relying on the same waypoints for navigation. *Id.* at 264. I originally sentenced Mr. Moreland to a term of 120 months in prison and a supervised release term of 96 months. *United States v. Moreland*, 366 F. Supp. 2d 416 (S.D. W. Va. 2005) (*Moreland I*). The Fourth Circuit vacated the sentence and remanded, finding that term

1

of imprisonment unreasonable and instructing this court to impose a sentence of not less than twenty years. *United States v. Moreland*, 437 F.3d 424, 437-38 (2006) (*Moreland II*).

Since the time that Mr. Moreland was sentenced in April 2005, the Supreme Court has handed down three additional opinions addressing the bounds of district court sentencing discretion and the proper review thereof. *See Rita v. United States*, 127 S.Ct. 2456 (2007); *Gall v. United States*, 128 S.Ct. 586 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007). With those cases and the Fourth Circuit's opinion and mandate in *Moreland II* in hand, this court sets about the task of resentencing Mr. Moreland. For the reasons that follow, I find that an intervening change in controlling authority triggers an exception to the mandate rule, and I impose a sentence of 120 months imprisonment, followed by a term of supervised release of 96 months.

In imposing this sentence, I do not seek to subvert the Fourth Circuit's instruction in *Moreland II*. Rather, this sentence is my effort to harmonize the legal principles recently announced in *Gall* with the controlling legal authority set forth in *Moreland II*. Now that the dust has settled somewhat, I am left with the conclusion that *Gall* signifies a dramatic change in controlling authority, and sentence Mr. Moreland accordingly.

A.    Factual Background

On July 16, 2004, Mr. Moreland sold 5.93 grams of cocaine base to an undercover police officer for $450. The West Virginia State Police arrested Mr. Moreland the next day and found an additional 1.92 grams of cocaine base in his possession at the time of his arrest. On December 7, 2004, a jury convicted Mr. Moreland on two counts of violating 21 U.S.C. § 841(a)(1). Under count one of the indictment, and based on the events of July 16th, the jury convicted Mr. Moreland of distributing five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). Because Mr.

Moreland had previously been convicted of a felony drug offense which had become final, he was subject to a statutory term of imprisonment of not less than ten years, nor more than life.  21 U.S.C. § 841(b)(1)(B); *see also* Sent. Hrg. Trans. 23-24 ("[W]ith respect to Count One, federal law provides the following maximum penalties: [a] term of imprisonment of not less than ten years, [nor] more than life.").  Under count two of the indictment, and based on the events of July 17th, the jury convicted Mr. Moreland of possessing with the intent to distribute 1.92 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), which carries a maximum statutory penalty of 30 years in prison. 21 U.S.C. § 841(b)(1)(C).

     B.     <u>Procedural History</u>

        1.     *District Court Sentencing*

On April 21, 2005, I conducted a sentencing hearing after the probation officer prepared a presentence investigation report.  Following *Booker*, I employed a three-step process in sentencing Mr. Moreland, which I described in my previous Memorandum Opinion (April 27, 2005):

> First, . . . I calculate[d] the advisory Guideline range in exactly the same manner as I calculated the Guideline range under the mandatory regime, including any potential upward or downward departures.  Second, I consider[ed] the sentencing factors listed under 18 U.S.C. § 3553(a).  Finally, I determine[d] an appropriate sentence based on a careful evaluation of the Guideline advice and each of the § 3553(a) factors.

*Moreland I*, 366 F. Supp. 2d at 418.  Additionally, I noted that "while I respect the advice of the Guidelines and give it serious consideration, I do not view that advice as carrying greater weight than any of the other § 3553(a) factors."  *Id.*  Further, I stated that "I [did] not view the advisory Guideline range as being 'presumptively reasonable.'" *Id*.

Based on the presentence investigation report and after hearing the parties' objections, I calculated Mr. Moreland's sentencing guideline range to be 360 months to life imprisonment.  The

severity of this range resulted from the application of the career offender enhancement in U.S.S.G. § 4B1.1.  *Id.* at 419.  This enhancement increased what would have been a total offense level of 26 with a criminal history category of "III" to a total offense level of 37 with a criminal history category of "VI."

I next analyzed the § 3553(a) factors to arrive at Mr. Moreland's final sentence.  In reviewing the nature and circumstances of the offense and the history and characteristics of the defendant, I noted the relatively minor amounts of cocaine base involved in the conviction.  *Id.* at 419-20.  I also observed that the "offense involved no violence or threat of violence," and that "neither of his two prior felony controlled substance offenses involved violence or firearms."  *Id.* at 420.  When I weighed the factors under § 3553(a)(2) – the need for the sentence to  reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant – I found that those factors weighed against the harsh punishment suggested by the Guidelines.  In reaching this conclusion, I took particular note of the "wide net" cast by the career offender guideline provision, which equated major drug trafficking convictions involving hundreds of kilos of cocaine with Mr. Moreland's previous convictions involving a single marijuana cigarette in one case and a small amount of cocaine base in the other.  I also determined that a variance sentence would serve the goals of deterrence and just punishment, and would offer Mr. Moreland an opportunity to right his life when he completed his still-lengthy sentence.  *Id.* at 421-22.  Finally, in examining the need to avoid unwarranted sentencing disparities, I determined that the possible disparity created by Mr. Moreland's sentence was warranted, after comparing and contrasting his offense with other like offenses.  *Id.* at 422-23.

After calculating, weighing, balancing and factoring, I imposed a term of imprisonment of 120 months.  I further imposed a term of supervised release of eight years, during which time Mr. Moreland was ordered to comply with a litany of requirements that would curb his liberty.

2.     *Moreland II*

Mr. Moreland filed a notice of appeal, assigning error in the conviction.  The government cross-appealed, arguing that this court "acted unreasonably in imposing a sentence of ten years imprisonment – a two-thirds reduction from the bottom of the advisory guideline range." *Moreland II*, 437 F.3d at 427.  After resolving the other assignments of error, the Fourth Circuit addressed the procedure for imposing a sentence after *Booker* and examined this court's procedure in sentencing Mr. Moreland, reviewing for both procedural and substantive reasonableness.[1]

The Fourth Circuit ratified the same sentencing process that this court employed in *Moreland I*:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range.  Next, the court must determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors. . . .  If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range.  The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary.  The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*Moreland II*, 437 F.3d at 432-33 (internal citations and quotations omitted).

---

[1]

  The Fourth Circuit affirmed this court with respect to the defendant's two assignments of error related to his conviction.  *See Moreland II*, 437 F.3d at 427.  I will therefore only address that portion of the circuit court's opinion relevant to resentencing.

The Fourth Circuit then noted that its task following *Booker* "is to determine whether the sentence is within the statutorily prescribed range and is reasonable." *Id*. at 433 (citations and quotations omitted). Review for reasonableness "involves both procedural and substantive components." *Id*. at 434. A sentence may be procedurally unreasonable "if the district court provides an inadequate statement of reasons or fails to make a necessary factual finding." *Id*. at 434. The *Moreland II* court determined that an otherwise procedurally reasonable sentence may nevertheless be substantively unreasonable "if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." *Id*. *Moreland II* indicated that the reasonableness standard "require[d] [it] to afford a degree of deference to the sentencing decisions of the district court" but that the standard was "not a code-word for 'rubber stamp.'" *Id*. at 433. It added that, when it reviewed a variance sentence, it would also examine "whether the district court acted reasonably with respect to (1) the imposition of a variance sentence, and (2) the extent of the variance." *Id.* at 433-34. Further, the court held that

> if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable. However, when the variance is a substantial one – such as the two-thirds reduction from the bottom of the advisory guideline range that is at issue here – we must more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be. *See [United States v.] Dean,* 414 F.3d at 729; *accord United States v. Dalton,* 404 F.3d 1029, 1033 (8th Cir. 2005) (holding, in the context of a downward departure for substantial assistance to the government, that "[a]n extraordinary reduction must be supported by extraordinary circumstances").

*Moreland II*, 437 F.3d at 434.

The Fourth Circuit applied this standard to Mr. Moreland's sentencing. It noted that "the district court first correctly identified the applicable guideline range." *Id.* The court then reviewed this court's discussion of the relevant 3553(a) factors, *id*. at 434-35, and determined that "the

sentence is reasonable in a procedural sense." *Id.* at 436.  The court further "agree[d] . . . that a variance was warranted here." *Id.* at 435-36.

After considering whether a variance sentence was proper, the Fourth Circuit determined that this court "committed a clear error of judgment by arriving at a sentence outside the limited range of choice dictated by the facts of the case." *Id.* at 436.  It held that although "the careful consideration of the pertinent § 3553(a) factors by the district court was exemplary," "the circumstances of this case are not so compelling as to warrant the substantial variance imposed by the district court." *Id.*  The Fourth Circuit disagreed with this court's finding that Mr. Moreland could become a productive member of society. *Id.* at 437 (concluding that, after reviewing the same facts as this court, it had "little confidence in [Mr. Moreland's] willingness to become a productive member of society").  The Fourth Circuit also disagreed with this court's determination that a term of imprisonment of ten years would provide "just punishment" for the offense conduct. *Id.* at 437 n.9 ("[W]e note that we are not persuaded that sentencing Moreland to the statutory mandatory minimum sentence will provide 'just punishment' for the offense.").  The court thus "vacate[d] the sentence and remand[ed] for the imposition of a sentence of no less than 20 years imprisonment."

### 3.    *Rita v. United States*

Shortly after the Supreme Court denied Mr. Moreland's petition for a writ of certiorari, it granted certiorari in two cases dealing with district courts' sentencing discretion and the proper review thereof. *Rita v. United States*, 127 S.Ct. 551 (2006); *Claiborne v. United States*, 127 S.Ct. 551 (2006).  *Rita* presented the question "whether the law permits the courts of appeals" to use a presumption of reasonableness if a sentence imposed falls within the properly calculated guideline range.  127 S.Ct. at 2459.  *Rita* answered that question in the affirmative. *Id.  Claiborne*, on the

other hand, presented the question whether, in imposing a below-guidelines sentence, it is "consistent with [*Booker*] to require that a sentence which constitutes a substantial variance from the guidelines be justified by extraordinary circumstances." *Claiborne v. United States*, 127 S.Ct. 551 (2006) (table decision granting certiorari). Unfortunately, the petitioner in *Claiborne* died before the Supreme Court issued its opinion, and the Court subsequently dismissed the case as moot.

4.    *Gall v. United States*

In *Gall v. United States*, 128 S.Ct. 586 (2007), the Supreme Court finally answered the question it originally framed in *Claiborne*, and which the Court expressly deferred in *Rita*: "whether a court of appeals may apply a 'proportionality test,' and require that a sentence that constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *Id.* at 586. In *Gall*, the defendant pleaded guilty to conspiracy to distribute ecstasy. *Id.* at 592. After correctly calculating the Sentencing Guideline range to be 30 to 37 months, *id.* at 598, the district court heard testimony from several witnesses and noted that it had received a "'small flood' of letters" from Gall's loved ones. *Id.* at 593. The district court imposed a variance sentence of thirty-six months of probation instead of a term of imprisonment. The court based its sentence on "the Defendant's explicit withdrawal from the conspiracy almost four years before the filing of the Indictment, the Defendant's post-offense conduct, especially obtaining a college degree and the start of his own successful business, the support of family and friends, lack of criminal history, and his age at the time of the offense conduct." *Id.* The Eighth Circuit reversed and remanded, holding that "a 100% downward variance" of probation instead of thirty months of imprisonment was "extraordinary," and was not supported by extraordinary circumstances as the Eighth Circuit required. *Id.* at 594.

8

The Supreme Court reversed, finding that although the Eighth Circuit "correctly stated the appropriate standard of review [of] abuse of discretion, it engaged in an analysis that more closely resembled *de novo* review of the facts presented and determined that, in its view, the degree of variance was not warranted," and "gave virtually no deference" to the district court's determination that § 3553(a) justified a significant variance. *Id*. at 600.  The Eighth Circuit's test, the Court found, "appl[ied] a heightened standard of review to sentences outside the Guidelines range" which was "inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions–whether inside or outside the Guidelines range." *Id*. at 596.  The Court therefore "reject[ed] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside of the Guidelines range" and "reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 595.  It additionally reaffirmed its holding in *Rita* by stating that an "appellate court may, but is not required to, apply a presumption of reasonableness" when a sentence is within the Guidelines range.  *Id*. at 597.

The Court directed the courts of appeals, when reviewing any sentence, to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id*.  It also held that when a court of appeals reviews a variance sentence, it "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*.  Sentencing courts must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id*. at 598 (citations and quotation marks omitted).  "The fact that the appellate court might reasonably have

9

concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*. at 597. It concluded:

> The Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the § 3553(a) factors justified a sentence of probation; it believed that the circumstances presented here were insufficient to sustain such a marked deviation from the Guidelines range. But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.

*Id*. at 602.

## II.   Mandate Rule

In *Moreland II*, the Fourth Circuit vacated and remanded the portion of my previous judgment that imposed a term of imprisonment of ten years and directed me to impose a term of imprisonment of not less than twenty years on remand. *Moreland II*, 437 F.3d at 437-38 ("We therefore vacate the sentence and remand for the imposition of a sentence of no less than 20 years imprisonment."). In light of *Gall*, it is unclear whether I am able to follow the Fourth Circuit's mandate.

"The mandate rule prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). "Deviation from the mandate rule is permitted only in a few exceptional circumstances, which include (1) when controlling legal authority has changed dramatically; (2) when significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; and (3) when 'a blatant error in the prior decision will, if uncorrected, result in a serious injustice.'" *Chao*, 511 F.3d at 467 (internal quotation marks and citations omitted). To determine whether the Fourth Circuit's mandate is still

binding, this court must therefore determine whether "controlling legal authority has changed dramatically." *Id*. To this end, this court requested and received, prior to the resentencing, supplemental sentencing memoranda from the parties related to the application of the mandate rule.

A.    Dramatic Change in Controlling Law

The Fourth Circuit has not had the occasion to examine in great detail when "controlling legal authority has changed dramatically." In *Chao*, the Fourth Circuit addressed the appellant's argument that controlling legal authority had changed between the time an earlier mandate issued and the time the district court imposed a sum of attorneys' fees related to the mandate. *Id*. at 467. The Fourth Circuit found that no intervening change in law had occurred when it adopted and applied, in 2006, Supreme Court precedent from 1992. *Id*. *Chao* is inapposite for two reasons. First, in *Chao*, the purported "change" in law arose from a Supreme Court case that predated (by over a decade) the Fourth Circuit's adoption of its reasoning. Because both district courts and courts of appeals are bound to apply Supreme Court precedent, it stands to reason that the Fourth Circuit's adoption of a test from the Supreme Court can hardly be seen as a "change" in legal authority, let alone a dramatic one. As *Chao* recognized, "[i]t is axiomatic that in our judicial hierarchy, the decisions of the circuit courts of appeals bind the district courts just as decisions of the Supreme Court bind the circuit courts." *Id*. at 465. A district court must therefore apply both Supreme Court precedent and Fourth Circuit precedent as its controlling legal authority. Second, the purported change in controlling law, even at the appellate level, predated the earlier mandate in question. *Chao*, 511 F.3d at 467 ("[O]ur decision in [*Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005)] was issued in March 2005, nearly a year before we handed down the [mandate]. The parties even addressed *Mercer* in their briefs in the Doe V appeal.").

11

When the Supreme Court addresses an issue *after* a court of appeals issues its mandate, "a district court is free to apply intervening changes in controlling law in considering a case on remand." *United States v. Robinson*, 390 F.3d 833, 837 (4th Cir. 2004), *certiorari granted, judgment vacated and remanded* 544 U.S. 971 (2005) (GVR in light of *United States v. Booker*). Such was the case in *Robinson*, where the Fourth Circuit declined the government's invitation to recall a previously issued mandate. *Robinson*, 390 F.3d at 837.  Instead, it found that an intervening Supreme Court decision "altered the controlling principles" applicable to the case on remand, and the "holding constituted a dramatic intervening change from [the Fourth Circuit's earlier decision], and the district court was obliged to adhere to the principles enunciated by the [Supreme] Court." *Id*.  There, the court recognized that the intervening Supreme Court precedent changed the law understood and applied by the Fourth Circuit, and it therefore refused to recall the mandate because the district court could freely apply the intervening law that changed circuit precedent.

Here, I must determine whether *Gall* constitutes an "intervening change in controlling law" which "alter[s] the controlling principles" of *Moreland II*, such that it "constitute[s] a dramatic intervening change." *Id*.

B.      *Moreland II* Standard of Review

In *Moreland II*, the Fourth Circuit applied *Booker* and reviewed for reasonableness.  This much is uncontroversial.  In its review, the court indicated that it afforded "a degree of deference to the sentencing decisions of the district court." *Moreland II*, 437 F.3d at 434.  With respect to the extent of any variance sentence, the court stated that "[t]he farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Id*. (citing *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005), for the proposition that "in the context

of a downward departure for substantial assistance to the government, . . . "[a]n extraordinary reduction must be supported by extraordinary circumstances").  Because the variance was "a substantial one," the Fourth Circuit explained that it thus "more carefully scrutinize[d] the reasoning offered by the district court."  *Id*. at 434.  The Fourth Circuit thereafter disagreed with the sentence imposed by this court, and found that a different sentence was appropriate.

C.      *Gall* Standard of Review

The Supreme Court in *Gall* described appellate court review as a "deferential abuse-of-discretion standard."  *Gall*, 128 S.Ct. at 591.  It instructed that when performing this review, the courts of appeals must look at the "totality of the circumstances, including the extent of any variance from the Guideline range."  *Id*. at 597.  Thus the Supreme Court determined that courts of appeals should apply neither a proportionality test that requires extraordinary circumstances nor a numerical method that purports to attach values to each variable.  *Id.* at 595-96.  The Court described the proportionality test as flawed because it comes too close to a presumption that substantial variances are unreasonable.  *Id*. at 595.  The mathematical formula was similarly error prone for other reasons: it failed to account for the fact that variances from lower sentences will always produce large variances in terms of percentage; a percentage based on imprisonment alone fails to account for the substantial loss of freedom affiliated with probation or supervised release; and finally, the formula "assumes the existence of some ascertainable method of assigning percentages to various justifications" which the Court described as a "classic example of attempting to measure an inventory of apples by counting oranges."  *Id*. at 596.

13

D.    Comparison of *Gall* and *Moreland II*

In examining whether *Gall* represents a dramatic change in controlling legal authority, I must compare the standards set forth in both *Gall* and *Moreland II*. The crux of *Gall* is that a court of appeals must now review sentences under a "deferential abuse-of-discretion" standard, and may not reverse a sentencing court because the appellate court "concluded that a different sentence was appropriate." 128 S.Ct. at 597. When a sentencing court adequately explains which sentencing factors warrant a sentence that is above the guideline range, below the guideline range, or even *within* the guideline range, the appellate court must apply a deferential standard of review. If a sentencing court imposes a variance sentence, a court of appeals may take into account the extent of the variance when determining whether the justification is sufficiently compelling.

*Moreland II* applies the type of proportionality review that the Supreme Court rejected in *Gall*. In *Rita*, the Supreme Court characterized *Moreland II* as standing for the "proposition that the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance." *Rita*, 127 S.Ct. at 2467 (citing *Moreland II*). The Supreme Court indicated that "it [would] consider that approach in [*Gall*]," in the term after which it decided *Rita*. *Id*. This court need not rely on the Supreme Court's characterization alone. The Fourth Circuit has indicated that *Moreland II* requires "compelling reasons for [a] variance." *United States v. Khan*, 461 F.3d 477, 500 (2006) (stating that *"under the principles outlined in Moreland* [*II*], the district court must present compelling reasons for the variance") (emphasis added). Further, *Moreland II* cited the Eighth Circuit's determination in *Dalton*, which stated that "[a]n extraordinary reduction must be supported by extraordinary circumstances." 404 F.3d at 1033. In *Gall*, the Supreme Court reversed the Eighth Circuit's panel opinion, which applied *Dalton*. *See Gall*, 128 S.Ct. at 602; *see*

*also United States v. Gall*, 446 F.3d 884, 889 (8th Cir. 2006) (citing identical language from *Dalton* that "[a]n extraordinary reduction must be supported by extraordinary circumstances"). In *Gall*, the Supreme Court disagreed with this standard. *Gall*, 128 S.Ct. at 595 ("reject[ing] . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside of the Guidelines range.")

Additionally, in reviewing Mr. Moreland's sentence, the Fourth Circuit asked whether a "two-thirds reduction from the bottom of the advisory guideline range" is reasonable, and "whether the circumstances of this case are so compelling as to *warrant the maximum possible downward variance*." *Moreland II*, 437 F.3d at 434, 437 (emphasis added). The Fourth Circuit thus examined the size of the variance, not the sufficiency of this court's explanation of the relevant §3553(a) factors – an explanation that it described as "exemplary." *Id*. at 436. The Fourth Circuit also did not factor the lengthy term (eight years) of supervised release into its "two-thirds" reduction calculation. The Supreme Court found a similar omission faulty in the Eighth Circuit's opinion in *Gall*, because that circuit failed to account for the serious limitations on liberty imposed by probation and supervised release. *Gall*, 128 S.Ct. at 595 ("[Q]uantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the 'substantial restriction of freedom' involved in a term of supervised release or probation."). Finally, the Fourth Circuit's selection of an alternative sentence appears to be based on its "conclu[sion] that a different sentence was appropriate." *Id*. at 597.

The government argues that *Gall* does not represent a dramatic change in controlling legal authority and, consequently, that this court is required to apply the *Moreland II* mandate. I disagree with the government's assertion. Despite a statement allegedly to the contrary that I will address,

15

the Supreme Court apparently believes that the law, as it had been applied by the courts of appeals, has changed – the Supreme Court has decided to grant certiorari, vacate, and remand at least eleven cases from the Fourth Circuit in light of its subsequent holding in *Gall*.[2]  Several courts of appeals believe that *Gall* fundamentally changes the way appellate courts must now review sentences. *See United States v. Carty*, __ F.3d __, 2008 WL 763770, at *3 and n.5 (9th Cir. Mar. 24, 2008) (en banc) ("*Rita*, *Gall*, and *Kimbrough* supersede how we, and the courts in this circuit, have approached the sentencing process in the past," and "Prior cases are overruled to the extent they are inconsistent with *Rita*, *Gall*, *Kimbrough*, or this opinion."); *United States v. Martin*, __ F.3d __, 2008 WL 748104, at *4 (1st Cir. Mar. 21, 2008) ("Indeed, after *Gall* the sentencing inquiry – once the court has duly calculated the GSR – ideally is broad, open-ended, and significantly discretionary."); *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) (reasoning that after *Gall*, it is apparent that "*Booker* empowered district courts, not appellate courts and not the Sentencing Commission").  The academic community has also viewed *Gall*'s shift as a momentous one, as reflected in the immediate commentary on academic weblogs.  *See generally*, Sentencing Law and Policy, http://sentencing.typepad.com, last visited March 31, 2008.  Certainly the law has changed from Mr. Moreland's perspective.  Had *Gall* been issued prior to his first sentencing, the Fourth Circuit would not have focused so heavily on the extent of the sentence's variance from the

---

[2]

*See Everhart v. United States*, __ S.Ct. __, 2008 WL 460960 (March 31, 2008); *Williams v. United States*, __ S.Ct. __, 2008 WL 379676 (March 24, 2008);  *Silver v. United States*, 128 S.Ct. 1287 (Feb. 19, 2008); *Byrd v. United States*, 128 S.Ct. 1070 (Jan. 14, 2008); *Cody v. United States*, 128 S.Ct. 1073 (Jan. 14, 2008);  *Newkirk v. United States*, 128 S.Ct. 1071 (Jan. 14, 2008);  *Davis v. United States*, 128 S.Ct. 870 (Jan 7, 2008); *Medina v. United States*, 128 S.Ct. 863 (Jan. 7, 2008); *Pyles v. United States*, 128 S.Ct. 865 (Jan. 7, 2008); *Romero-Candelaria v. United States*, 128 S.Ct. 868 (Jan. 7, 2008); *Sharpe v. United States*, 128 S.Ct. 877 (Jan. 7, 2008). The Supreme Court has also granted certiorari, vacated, and subsequently remanded an additional ten cases from the Fourth Circuit in light of *Kimbrough*.

guideline range, but instead it would have reviewed the "totality of the circumstances" and accorded Mr. Moreland's sentence the same deference it would have had his sentence instead fallen within the guideline range.  The appellate court would have also considered the significant term of supervised release that Mr. Moreland faced following his lengthy term of imprisonment.  Finally, I do not believe the appellate court would have substituted its own judgment of an appropriate sentence for the judgment of the sentencing court in light of *Gall*'s instruction that "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall*, 128 S.Ct. at 597.

The only argument the government can offer that militates in favor of finding that *Gall* does not represent a dramatic change in the controlling law of *Moreland II* is the Supreme Court's statement in *Gall* that "[its] explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."  *Gall*, 128 S.Ct. at 594.  According to the government, this statement demonstrates that *Gall* did not change *Booker*, but rather reiterated the state of the law that existed after *Booker*. This argument is unpersuasive for two reasons.  First, while the standard of review set forth in *Booker* may have been clear to the Supreme Court, it was sufficiently opaque that nearly all of the courts of appeals struggled to harmonize the teachings of *Booker* with the idea that some form of meaningful appellate review of sentences is required.  If it were "pellucidly clear" that courts of appeals were to apply a deferential abuse-of-discretion standard, the Court would have had no occasion to hear a case like *Gall*. Instead, the Supreme Court has addressed, in some respect or another, the appellate standard of review for the advisory guideline regime three times since *Moreland II*.  The Supreme Court's understanding of the *Booker* abuse-of-discretion standard may

17

not have changed, but it still saw fit to reject two standards of appellate review applied by courts of appeals. *See id.* at 595.

Second, the government's argument does not take into account that a district court is not only bound by the law as promulgated by the Supreme Court, but it is also bound by the law of the circuit of which it is a part. Even if *Gall* did not change the law from the Supreme Court's perspective, it did change the law as it was applied by the Fourth Circuit, law which is controlling in this court. As *Moreland II* and other cases demonstrate, the Fourth Circuit understood *Booker* to require proportionality and numerical review of sentences under a reasonableness standard of review. Likewise, the Fourth Circuit required "compelling reasons" to justify a variance. *See, e.g., Kahn*, 461 F.3d at 500. *Gall* makes plain that this is not how the Court intended *Booker* to be interpreted. Although the Fourth Circuit has not squarely addressed the issue, it has recognized that *Moreland II*'s "principles" are doubtful after *Gall*. *See United States v. Pauley,* 511 F.3d 468, 475 (4th Cir. 2007) ( "[T]o the extent that [the Fourth Circuit's] language in *Khan* is inconsistent with *Gall*, *see Khan*, 461 F.3d at 500 ('under the principles outlined in *Moreland*, the district court must present compelling reasons for the variance'), we obviously are bound by *Gall*."). Thus, the controlling law as understood and applied by the Fourth Circuit has changed dramatically since the time the mandate issued.

It is with great reluctance that I find that this case falls within an exception to the mandate rule. "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993) (quoting *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939)). Nevertheless, because I believe *Gall* represents a dramatic change in controlling legal authority, and because I believe that the

18

Fourth Circuit prefers that district courts first apply intervening changes in controlling law instead of recalling mandates, I must deviate from the *Moreland II* mandate and resentence Mr. Moreland in consonance with *Gall*.  *See Robinson*, 390 F.3d at 837 (refusing to recall the mandate because "the district court was obliged to adhere to the principles enunciated by the [Supreme] Court").  I find that the law in the Fourth Circuit has changed, and changed dramatically, since the time that the Fourth Circuit issued its mandate in *Moreland II*.  Furthermore, to ignore *Gall* and sentence Mr. Moreland pursuant to the mandate would result in a serious injustice.

**III.    Statement of Reasons**

As the Fourth Circuit stated in *Moreland II*, neither party contested my original calculation of the applicable guideline range, which was a term of imprisonment of 360 months to life imprisonment.  The Fourth Circuit also determined that my previous "careful consideration of the pertinent § 3553(a) factors . . . was exemplary."  *Moreland II*, 437 F.3d  at 436.  It also found no flaw with the initial decision that a variance sentence was reasonable.  *See Moreland II*, 437 F.3d at 435.  For the reasons stated in *Moreland I*, I believe a variance sentence is still appropriate, and will therefore address the relevant § 3553(a) factors.

**A.      18 U.S.C. § 3553(a) Factors**

*1.     The History and Characteristics of the Defendant*

Brian Antoine Moreland is a 34 year-old black male.  He was born in Detroit, Michigan on April 12, 1973, and is in good health.  His parents were never married.  His father is 56 years old and still resides in Michigan, but the defendant's mother died from cirrhosis of the liver in 1999.  The defendant himself is the father of one child, a fifteen year-old boy who resides with his mother in Detroit.  Mr. Moreland graduated from high school in 1991, and earned 13 college credits at a

community college in Ann Arbor in 1992.  After taking those classes, he held a series of jobs, and in 2001 he returned to school to take computer courses.  I once again find that he has demonstrated that he has the ability and potential to become a productive member of society.  His record in prison has justified my initial assessment.  He has, by all accounts, been a model prisoner, and continues to make achievements in his education.  Accordingly, the "characteristics of the defendant" indicate that Mr. Moreland needs the discipline of a corrective institution for a period, but still has the capacity to change his ways and lead a fruitful life.

>        2.        *The Nature and Circumstances of the Offense*

The instant offense did not involve a large amount of cocaine base.  Specifically, the defendant sold 5.93 grams of cocaine base and possessed an additional 1.92 grams of cocaine base, for a grand total of 7.85 grams.  There is no evidence that the defendant was in the business of distributing kilos of cocaine base.  Further, the offense involved no violence or threat of violence. He possessed no firearm or other weapon, and threatened no one. Additionally, neither of his two prior felony controlled substance offenses involved violence or firearms.  Although the defendant was undoubtedly engaged in the distribution of cocaine base, the non-violent nature and circumstances of the instant offense substantially mitigates the seriousness suggested by the career offender guideline provision.

>        3.        *The Need for the Sentence Imposed – to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant*

When applying these factors to Brian Moreland's case, it becomes clear that a sentence of ten years imprisonment, followed by eight years of supervised release is sufficient to achieve each of the sentencing goals outlined in § 3553(a).  First, I find that this sentence is sufficient to reflect

the seriousness of the offense.  Mr. Moreland was convicted of distribution/possession with the intent to distribute 7.85 grams of cocaine base.  Without the application of the career offender guideline enhancement and the statutory mandatory minimum, his guideline range would have been 78 to 97 months, given his criminal history and the offense conduct.  The statutory mandatory minimum takes into account the fact that the present offense is not his first conviction.  It is also undeniably a substantial amount of time to spend in prison.  Mr. Moreland spent a total of less than six months in jail for his previous two offenses, and a sentence that takes ten years from his young life will certainly promote respect for the law.

Part of this inquiry, of course, requires me to consider and award a sentence that will provide "just punishment for the offense."  In this case, I find that anything greater than the sentence imposed would not constitute a "just punishment" for Mr. Moreland's offense.  As noted earlier, Mr. Moreland's non-career offender guideline range jumped from 120 months to a range of 30 years to life imprisonment following the application of the career offender guideline enhancement.  This enhancement provides for both an enhanced offense level and an enhanced criminal history for qualifying defendants.  Section 4B1.1 of the United States Sentencing Guidelines provides for the application of this enhancement to defendants who meet certain categorical requirements, including the requirement that "the defendant has at least two prior felony convictions of . . . a controlled substance offense."  As I stated in *Moreland I*, § 4B1.2 casts a wide net, defining "controlled substance offense" as an "offense under federal or state law, *punishable* by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture import, export, distribute or dispense."

21

Any offense that falls within this definition *must* be counted as a predicate offense, regardless of the amount of drugs involved, the actual punishment imposed, or the length of time between the prior and present offenses.  Thus, this guideline provision puts Mr. Moreland's distribution of a single marijuana cigarette on par with a kingpin in a drug conspiracy who is convicted of distributing kilos of drugs or a violent offender who uses firearms or threats of harm to commit his crimes–all of these crimes count as predicate offenses for the application of this guideline provision.

I find that the failure of this guideline provision to take into account the variety of offenses that fit within this extraordinarily broad definition creates tension within the advisory system.  The advisory regime places great value on the sentencing factors outlined in § 3553(a).  I am instructed to look at the nature, characteristics, and severity of the offense in question prior to sentencing.  To fail to undertake a similar analysis on predicate offenses that increase the defendant's guideline range defies logic.

Mr. Moreland is neither the "repeat violent offender" nor "drug trafficker" targeted by the career offender guideline enhancement.  The first of his predicate offenses occurred in 1992 when Mr. Moreland made the stupid and criminal decision to deliver a single marijuana cigarette to a prison inmate.  The second offense occurred in 1996 after he was arrested with 6.92 grams of cocaine base, and he pleaded guilty to "distribution/manufacture/possession" of less than 50 grams of cocaine base.  These two offenses are significant, but they hardly constitute the type and pattern of offenses that would indicate that Mr. Moreland has made a career out of drug trafficking.  Both offenses involved the distribution of small, user amounts of drugs, and both offenses lack temporal proximity to either each other or the present offense.  In fact, the two prior offenses are each over a decade old.  Furthermore, neither offense involved even the suggestion of violence, and Mr.

22

Moreland's criminal history is devoid of any violent or firearm offenses.  For this court simply to base the length of a sentence on the absolute number of Mr Moreland's convictions without examining the details and circumstances of each offense would not produce justice in this case. Without the career offender guideline calculation, Mr. Moreland has a total of five criminal history points (two points are added to his original three because the instant offense occurred while Mr. Moreland was on lifetime probation), has spent a grand total of less than six months in jail for his predicate offenses, and has been convicted of distributing a "career" total of a mere 14.77 grams of cocaine base and a single marijuana cigarette (which the guidelines attribute a weight of .5 grams). The amount of drugs involved in Mr. Moreland's entire criminal history would rattle around in a matchbox.

Mr. Moreland has not engaged in a "career" of crime and has not subsisted on a criminal livelihood.  He is a 34 year-old man who has made both good and bad decisions in his life.  He has not, however, demonstrated the pattern of recidivism or violence that would justify disposal to prison for a period of 30 years to life.  One of the goals of sentencing remains the rehabilitation of convicts.  I find that Mr. Moreland has an excellent chance of turning his life around after he completes his substantial sentence.  As the *Carvajal* court noted, the goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment . . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life.  Punishment should not be more severe than necessary to satisfy the goals of punishment."  *Carvajal*, 2005 U.S. Dist. LEXIS 3076, at *15-16.  In the present case, a ten-year term of imprisonment, followed by an eight-year term of supervised release, is adequate to satisfy the goals of punishment.

I further find that the sentence imposed is sufficient to deter both Mr. Moreland and the general public from committing similar offenses.  Additionally, as Mr. Moreland will be under the careful watch of the Bureau of Prisons and the Probation Department until he is 49 years old, I am confident that this sentence will protect the public from any further crimes of the defendant.  Mr. Moreland has not demonstrated a pattern of serious recidivism and violence that would justify or necessitate a greater term of imprisonment.

4. *The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

Section 3553(a) next directs the sentencing judge to consider the need to avoid unwarranted disparity at sentencing.  This factor initially seems to encourage deference to the Guideline range, because the Guidelines were developed to eliminate unwarranted sentencing disparities in federal courts.  In practice, however, the focus of the Guidelines has gradually moved beyond elimination of *unwarranted* sentencing disparities and toward the goal of eliminating *all* disparities.  As I have stated previously, this outcome is not only impractical but undesirable.

The career offender provisions of the Guidelines, as applied to this case, perfectly exhibit the limits of a Guideline-centric approach.  Two relatively minor and non-violent prior drug offenses, cumulatively penalized by much less than a year in prison, vaulted this defendant into the same category as major drug traffickers engaged in gun crimes or acts of extreme violence.  The career offender guideline provision provides no mechanism for evaluating the relative seriousness of the underlying prior convictions.  Instead of reducing unwarranted sentencing disparities, such a mechanical approach ends up creating additional disparities because this Guideline instructs courts to substitute an artificial offense level and criminal history in place of each individual defendant's

24

precise characteristics.[3]   This substitution ignores the severity and character of the predicate offenses.  In the instant case, for example, I examined the defendant's prior convictions and found that they were non-violent and relatively minor.   Accordingly, after calculating the advisory Guideline range, including the career offender guideline provisions, I decline to follow the advice offered by the Guidelines, and instead sentence the defendant to the variance mandatory minimum of ten years in prison.

## IV.   Conclusion

For the reasons I have stated, I impose a term of imprisonment of 120 months, and impose a term of supervised release of 96 months.

The court **DIRECTS** the Clerk to forward copies of this written Memorandum Opinion to counsel of record and any unrepresented party and to publish the decision on the court's website at www.wvsd.uscourts.gov.

---

[3]

In so doing, I recognize "Congress' judgment that those who repeatedly commit drug felonies should be severely punished for their actions."  *Moreland II*, 437 F.3d at 437 n.9.  I find that for this defendant, a term of imprisonment of ten years provided by Congress in 21 U.S.C. § 841(b)(1)(B), followed by a term of supervised release of eight years provided by Congress 21 U.S.C. § 841(b)(1)(B), sufficiently captures Congressional policy.  I understand the Congressional policy of imposing harsher sentences on repeat offenders.  This sentence, however, also fulfills Congress' other policy objectives aimed specifically at sentencing courts embodied in 18 U.S.C. § 3553(a), such as the mandate that the court impose a sentence that is sufficient, but not greater than necessary, to promote respect for the law and reflect the seriousness of the offense.

Enter:          April 3, 2008

_____
Joseph R. Goodwin, Chief Judge